CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/30/2024
LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 6:21-cr-00017 |
| v. | MEMORANDUM OPINION |
| LUIS RAMON DE LA CRUZ-LEONARDO, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This matter is before the Court on Luis Ramon De La Cruz-Leonardo's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, Dkt. 78, and the Government's motion to dismiss the § 2255 petition, Dkt. 90. In his motion, De La Cruz-Leonardo ("Petitioner") asserts three claims for ineffective assistance of counsel in violation of the Sixth Amendment. *See* Dkt. 78. For the following reasons, the Court rejects each of Petitioner's claims and thereby DENIES Petitioner's motion and GRANTS the Government's motion.

## I.     Background

Petitioner, a truck driver, was arrested on October 7, 2021, while passing through Virginia on Interstate 81. Dkt. 66 at 4-5. The arrest came after officers with the Drug Enforcement Administration and Virginia State Police contacted the Rockbridge County Sheriff's Office in reference to a tractor-trailer on Interstate 81 that was believed to be trafficking narcotics, which truck was later identified at a truck stop and associated with Petitioner. Dkt. 66 at 4-5. When questioned by police, Petitioner volunteered that he was hauling potato chips from Texas; that he carried a properly permitted concealed firearm; and that officers were free to

review the truck's manifest and search its cargo. Dkt. 66 at 4-5. Officers located the firearm

where Petitioner said it would be: on the floor between the two front seats of the cab. Dkt. 66 at

5. It was loaded. Dkt. 66 at 5. When a Roanoke City Police Department K-9 arrived on the scene

and performed a free-air sniff of the truck, the K-9 gave a positive alert on the cab of the truck.

Dkt. 66 at 5. Officers discovered 135 pounds of cocaine within a black duffle bag in the portion

of the cab designed for sleeping. Dkt. 66 at 5. Petitioner, in a post-*Miranda* interview, averred

that he was unaware of anything illegal in the tractor-trailer, and he made no statements

regarding the cocaine. Dkt. 66 at 5-6. Petitioner was then placed under arrest. Dkt. 66 at 5-6.

In November 2021, a grand jury indicted Petitioner on two criminal counts: (1)

knowingly and intentionally possessing with intent to distribute 5,000 grams or more of cocaine,

and (2) knowingly possessing a firearm in furtherance of a drug trafficking crime. Dkt. 3 at 1-2.

Petitioner was represented by private counsel, Ms. Sandra Drewniak Nicks. Dkt. 64 at 6. In

December 2022, pursuant to a Rule 11(c)(1)(C) plea agreement, Petitioner plead guilty to count

one, with count two being dismissed. Dkt. 57. Petitioner stipulated to a two-point Guideline

enhancement for possession of a dangerous weapon. Dkt. No. 57 at 1-3. Petitioner and the

Government agreed to a period of imprisonment "within the range of 135 months to 168

months," and the Government further agreed that it would "recommend a sentence at the low end

of the agreed sentencing range." Dkt. 57 at 3-4.

At the plea hearing, before accepting the plea, the Court placed Petitioner under oath to

confirm Petitioner was satisfied with his attorney's representation and that his was a knowing

and voluntary plea. Dkt. 88 at 4. The Court and Petitioner engaged in the plea colloquy, in which

the Court asked, "Are you fully satisfied with the counsel, the representation, and advice given to

in this case by your attorney," to which Petitioner responded, "Yes." Dkt. 88 at 4. Later in the

proceeding, counsel for Petitioner and for the Government took turns summarizing the terms of the plea agreement aloud, which included the Government stating that "the sentencing guidelines range is stipulated at between 50 and 150 kilos of cocaine, so a 34, with a plus 2 for possession of a dangerous weapon." Dkt. 88 at 9. Counsel also stated that Petitioner was "giving up his right to collateral attack except as to matters that involve ineffective assistance of counsel." Dkt. 88 at 9. At the conclusion of counsels' summary, the Court directed Petitioner to stand once more and asked him whether counsel had said "anything about the agreement that's different from your understanding of the agreement," to which Petitioner responded, "No." Dkt. 88 at 9.

Toward the end of the hearing, the Court asked whether Petitioner read the plea agreement (or was able to have the agreement read to him with the assistance of the interpreter), so that he understood its terms before signing it. Dkt. 88 at 10. Petitioner answered, "yes." Dkt. 88 at 10. After the Government proffered its evidence against Petitioner, Dkt. 88 at 11, the Court asked Petitioner if he would like to "present any evidence at this time?" Dkt. 88 at 12. Petitioner's counsel, Ms. Drewniak, responded, "Not at this time, Your Honor." Dkt. 88 at 12. Finally, the Court requested Petitioner to stand and asked, "how do you plead to the charge, guilty or not guilty?" Dkt. 88 at 12. Petitioner responded, "Guilty." Dkt. 88 at 12. The Court found that Petitioner was "fully competent and capable of entering an informed plea, [and] that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense." Dkt. 88 at 12. Therefore, the Court concluded, "[Petitioner's] plea and plea agreement are [] accepted and he is now adjudged guilty of the offense." Dkt. 88 at 12.

The U.S. Probation Office subsequently prepared the presentence investigation report ("PSR"), which concluded that Petitioner faced a mandatory minimum sentence of 10 years for

the drug charge[1] and had a criminal history score of zero (category I) and a total offense level of 33. Dkt. 66 at 11. Petitioner was therefore subject to an advisory guideline range between 135 months to 168 months. Dkt. 66 at 11. In March 2023, the Court held a sentencing hearing. Dkt. 89. At the hearing, the Court stated that it had reviewed Petitioner's final presentence investigation report, sentencing memorandum, and the letters of support on his behalf, and it had concluded that with Petitioner's total offense level of 33 and a Criminal History Category of I, the advisory guideline range would be between 135 months and 168 months. Dkt. 89 at 2-3. Neither party objected, and Petitioner did not put on any additional evidence. Dkt. 89 at 2-3. Petitioner's counsel reiterated for the Court the considerations set forth in the sentencing memorandum, *i.e.*, that Petitioner has no criminal history, is a "good father" and a "good husband," works hard and cares for his family, and has taken responsibility for the facts of the case as pleaded. Dkt. 89 at 3-4. The Court asked Petitioner if there was "anything [he] would like to say before the Court pronounces sentence," and Petitioner answered, "No." Dkt. 89 at 5. The Court, having considered and applied the 18 U.S.C. § 3553(a) factors, then sentenced Petitioner to 135 months' incarceration—a sentence at the bottom end of the Guideline range and the parties' stipulated sentencing range. Dkt. 89. At 5-6.

Petitioner, pursuant to 28 U.S.C.§ 2255(a), now raises three ineffective assistance of counsel claims. *See* Dkt. 78 at 2-4.

## II.    Legal Standard

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in

---

[1]     Petitioner's gun charge carried a five-year mandatory minimum sentence. *See* Dkt. 90 at 3; 18 U.S.C. § 924(c).

excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.

§ 2255(a). Such provisions for collateral attack of a conviction or sentence contemplate that a

petitioner must establish either an error of constitutional or jurisdictional magnitude which could

not have been raised on direct appeal. *Hill v. United States*, 368 U.S. 424, 428 (1962). Errors of

law and errors of fact do not provide a basis for collateral attack unless the error constitutes "a

fundamental defect which inherently results in a complete miscarriage of justice." *United States*

*v. Addonizio*, 442 U.S. 178, 185 (1979). However, failure to raise on direct appeal a claim of

ineffective assistance of counsel is not regarded as procedurally defaulted. *Massaro v. United*

*States*, 538 U.S. 500, 509 (2003).

In any case, the petitioner bears the burden of proving grounds for a collateral attack by a

preponderance of the evidence. *Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965). The

district court, in ruling on a § 2255 motion, is required to hold a hearing "[u]nless the motion and

the files and records of the case conclusively show that the prisoner is entitled to no relief." 28

U.S.C. § 2255(b). Although the district court has discretion, generally "a hearing is required

when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the

record, or when a credibility determination is necessary to resolve the claim." *U.S. v. Mayhew*,

995 F.3d 171, 176-77 (4th Cir. 2021). If the district court "denies relief without an evidentiary

hearing," the reviewing court will "construe the facts in the movant's favor." *United States v.*

*Akande*, 956 F.3d 257, 261 (4th Cir. 2020). Furthermore, courts have an obligation to construe §

2255 motions liberally when the Petitioner proceeds pro se. *Mayhew*, 995 F.3d at 184.

### III.   Discussion

One way to show constitutional error under § 2255(a) is by establishing the ineffective

assistance of counsel, since such representation would violate the Sixth Amendment. *See*

*Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). Under the framework set forth in *Strickland*, an ineffective assistance of counsel claim consists of two elements: a petitioner must show that their counsel's performance was **deficient** and that they were **prejudiced** as a result of the counsel's deficient performance. *Strickland*, 466 U.S. at 687. In applying *Strickland*, courts need not address both prongs if the petitioner makes "an insufficient showing on one." *Moore v. Hardee*, 723 F.3d 488, 500 (4th Cir. 2013).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland,* 466 U.S. 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689. The petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

In the sentencing context, a prisoner may demonstrate prejudice by showing that he or she received additional prison time at sentencing due to counsel's error or omission. *Glover v. United States*, 531 U.S. 198, 203–04. The additional prison time need not be substantial: "[A]ny amount of actual jail time has Sixth Amendment significance," and thus a defendant can make

6

out a claim of prejudice in the sentencing context by showing that his sentence was increased, whether substantially or not, as a result of defense counsel's error. *Id*. at 203-205.

Nonetheless, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Because ineffective assistance claims can function as a way to "escape rules of waiver and forfeiture and raise issues not presented at trial," the *Strickland* standard must be applied with "scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Id*. When conducting a review of counsel's competence, the Court must apply "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time*," Wiggins v. Smith*, 539 U.S. 510, 523 (2003), and its scrutiny "must be highly deferential." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from the counsel's perspective at the time." *Id*. Indeed, the Supreme Court has emphasized that "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. The measure of competence in the context of trial strategy is whether the strategy employed by counsel was objectively reasonable, not whether counsel provided the best possible defense. *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Here, Petitioner raises three ineffective assistance of counsel claims. Petitioner's first claim avers that his counsel failed to "dismiss the relevant conduct associated with the 924(c) enhancement." Dkt. 78 at 2. Petitioner's second claim avers that his counsel failed to "present supporting evidence to argue against and to dismiss the firearm enhancement . . . to secure the safety valve which heavily impacted his sentence." Dkt. 78 at 2. Petitioner's third and final claim

avers that his counsel "failed to secure" a U.S.S.G. § 5K1.1 substantial assistance motion or a Rule 35(b) motion. Dkt. 78 at 4.

The Court has considered Petitioner's § 2255 motion, *see* Dkt. 78, as well as Petitioner's responses to the Government's motion to dismiss. Dkts. 100, 101. The Court finds that an evidentiary hearing on the motion is not necessary, because Petitioner has not presented a "colorable Sixth Amendment claim showing disputed facts beyond the record" or a dispute about credibility. *Mayhew*, 995 F.3d at 176-77. To the contrary, Petitioner's "motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255(b). The Court finds that the record clearly demonstrates that Petitioner properly pleaded guilty to trafficking a large quantity of cocaine, during which offense he carried a loaded firearm, and for which offense he was later sentenced at the lowest end of his Rule 11(c)(1)(C) plea agreement. Petitioner claims that his counsel should have: (i) contested the applicability of the § 924(c) gun charge, (ii) contested the firearm enhancement, (iii) sought his eligibility under the safety valve provision, and/or (iv) pushed for a substantial assistance motion from the Government. But the evidence, to the contrary, presents an unavoidable connection between Petitioner's drug trafficking and firearm possession that effectively refutes each of Petitioner's claims. Any attorney with a modicum of trial experience would have found little to no basis for contesting Petitioner's firearm charge or his firearm enhancement, or for pursuing Petitioner's eligibility under the safety valve or substantial assistance provisions. The Court finds that, in each instance, Petitioner's counsel was abundantly reasonable, and that Petitioner fails to demonstrate either deficient performance or prejudice. Accordingly, as explained more fully below, the Court rejects each of Petitioner's ineffective assistance claims and denies Petitioner's motion.

### A. Petitioner's First Claim

Petitioner first argues that his counsel provided ineffective assistance when she failed to "dismiss the relevant conduct associated with the 924(c) weapon's enhancement." Dkt. 78 at 2. However, on its face, the boundaries of Petitioner's argument are not entirely clear. The Government notes that Petitioner's first claim is "[p]resumably" referring to the § 2D1.1(b)(1) enhancement for possessing a firearm in connection with the drug offense, "which the parties agreed to in the plea agreement" in exchange for dismissing the § 924(c) count originally charged in the indictment. Dkt. 90 at 2. Petitioner's "Supporting Facts" under his first claim, on the other hand, appear to co-mingle arguments against two distinct things: the § 2D1.1(b)(1) firearm enhancement, and the applicability of the § 924(c) count itself. For our purposes, the Court will construe Petitioner's first claim to focus on the applicability of the § 924(c) count and will construe Petitioner's second and third claims to include all of his arguments against the firearms enhancement. *See Mayhew*, 995 F.3d at 184 (construing pro se § 2255 motions liberally).

### *Law Regarding Section 924(c)*

Petitioner was indicted, under 18 U.S.C. §924(c), for "knowingly possess[ing] a firearm, to wit a Kimber 1911 .45 caliber pistol, in furtherance of a drug trafficking crime." Dkt. 3 at 1-2. Section 924(c) provides, in relevant part, that "any person who, . . . in furtherance of any such [crime of violence or drug trafficking] crime, possesses a firearm, shall, in addition to the punishment provided for such crime . . . (i) be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. § 924(c)(1)(A). "While this language has been assiduously massaged by appellate courts, the statute is driving at a simple point: whether there exists a sufficiently close nexus between the firearms and the drugs to conclude that possession of the firearms was 'in furtherance of' drug trafficking." *U.S. v. Moore*, 769 F.3d 264, 270 (4th Cir. 2014) (quoting §

924(c)). To secure a conviction under § 924(c), the Government is required to present evidence indicating that "the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." *U.S. v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). But this test is not strenuous: "[T]he fact finder is free to consider the numerous ways in which a firearm might further or advance drug trafficking." *Moore*, 769 F.3d at 270 (quoting *Lomax*, 293 F.3d at 705). This includes the ways in which a firearm may help "defend[] the dealer's drugs, drug profits, or his person." *Id*.

Petitioner, on the other hand, contends that, the Government was required to show that he "intended to use" or "actively employed" the firearm in order to convict him under § 924(c). Dkt. 78 at 2.[2] Petitioner contends that proximity and accessibility of a firearm along with the presence of drugs is not sufficient to support a § 924(c) conviction. Dkt. 78 at 2. Petitioner concludes, therefore, that he "would have likely prevailed had he gone to trial" on this evidence. Dkt. 78 at 2.

Petitioner misstates the standard for securing a conviction under § 924(c) and also fails to demonstrate ineffective assistance of counsel. The evidence in the case showed that Petitioner possessed a loaded firearm in close proximity to the 135 pounds of cocaine discovered in his cab. Dkt. 66 at 5. Petitioner submits that he had legitimate, non-drug-related reasons for possessing the firearm: Petitioner was kidnapped by Mexican cartels in 2019, and since that incident, Petitioner traveled with the handgun in his truck to "defend himself should he encounter another kidnapping or hijacking." Dkt. 78 at 3. Petitioner further argues that the firearm in question, a

---

[2]    Petitioner's makes these arguments while citing to Bailey v. U.S., 516 U.S. 137 (1995), a case that has been superseded by statute. *Bailey* held, as Petitioner correctly emphasized in his supplemental responses, Dkts. 100-101, that a conviction under § 924(c) required evidence sufficient to show active employment of firearm by the defendant. *See Bailey*, 516 U.S. at 144. However, in the wake of *Bailey*, Congress amended 18 U.S.C. § 924(c) to criminalize the "possession" of a firearm "in furtherance of" certain crimes, including drug trafficking. *See U.S. v. Lomax*, 293 F.3d 701, 703 (4th Cir. 2002). Therefore, *Bailey*'s construction of § 924(c) no longer applies.

Kimber 1911 .45 caliber pistol, is a "big and heavy handgun which is not a practical gun of choice . . . or a preferred weapon amongst drug dealers." Dkt. 78 at 3.

However, this evidence is not so persuasive that his counsel should have concluded that, on those facts, Petitioner "would have likely prevailed" at trial, as he suggests. We remind Petitioner that a fact-finder, in conducting a § 924(c) analysis, may consider how a firearm helps "defend[] the dealer's drugs, drug profits, *or his person*." *Moore*, 769 F.3d at 270 (emphasis added). Based on the evidence, Petitioner's counsel was not deficient for viewing Petitioner's conviction under § 924(c) as plausible—at the very least. Furthermore, she was not deficient for negotiating a plea agreement whereby the § 924(c) charge, with its mandatory minimum and consecutive five-year sentence, was dropped, and Petitioner instead pleaded only to the drug charge and relatively modest firearm enhancement. As the PSR notes, "[h]ad the defendant proceeded to trial in this matter . . . , he may have been convicted of the additional count" and been subjected to a consecutive five year minimum sentence. Dkt. 66 at 11. "Also, he would not have received credit for acceptance of responsibility which would have increased his current offense level to 36. Based on a criminal history category of I, the advisory guideline range would have become *188 to 235 months*." Dkt. 66 at 11 (emphasis added). In this light, counsel's decision to not contest the firearm charge was well within the "wide range" of reasonable professional assistance that constitutes effective representation, *Strickland*, 466 U.S. at 689, Petitioner's first claim for ineffective assistance of counsel must fail.

### B.  Petitioner's Second Claim

Petitioner's second claim is that his counsel failed to "present supporting evidence to argue against and to dismiss the firearm enhancement . . . to secure the safety valve which heavily impacted his sentence." Dkt. 78 at 2. Because elements of Petitioner's first and second

claims bleed into each other, as noted above, the Court construes his second claim to include his contentions from both the first and second claim, *i.e.*, that counsel was deficient for (i) not arguing against the firearm enhancement, and for (ii) not attempting to secure a lesser sentence under the safety valve provision.

### Law Regarding Firearm Enhancements

For drug trafficking offenses, the U.S. Sentencing Commission Guidelines define "various 'Specific Offense Characteristics' providing for offense-level enhancements where applicable." *United States v. Bolton*, 858 F.3d 905, 912 (4th. Cir. 2017) (quoting U.S.S.G. § 2D1.1(b)). The first of these enhancements states, "[i]f a dangerous weapon (including a firearm) was possessed, increase by two levels." U.S.S.G § 2D1.1(b)(1). Regarding this enhancement, Guidelines commentary presents a low bar for its application, indicating that "[t]he enhancement should be applied if the weapon was present, unless it is *clearly improbable* that the weapon was connected with the offense." *Bolton*, 858 F.3d 912 (quoting § 2D1.1(b)(1) cmt. n.11(A)) (emphasis added).

Under this framework, the Government carries the initial burden of "proving possession of a weapon in connection with drug activities" by a preponderance of the evidence. *Bolton*, 858 F.3d 912. If the Government carries this burden, the defendant may avoid the enhancement only by showing that the weapon's link to his or her drug activities was "clearly improbable." *Bolton*, 858 F.3d 912; *see also Harris*, 128 F.3d at 852-53 (affirming application of enhancement because of the proximity of the gun to the drugs). The Fourth Circuit has identified several factors that a district court may consider in determining whether the Government has carried its burden, including the location of the weapon, its proximity to the drugs, and the type of firearm. *U.S. v. Manigan*, 592 F.3d 621, 629 (4th Cir. 2010). In circumstances where the underlying

12

offense is conspiracy to distribute drugs, the presence of a weapon "in a place where the conspiracy was carried out or furthered" is enough to link the weapon to the conspiracy. *Bolton*, 858 F.3d 912 (quoting *United States v. Apple*, 962 F.2d 335, 338 (4th Cir. 1992)).[3] Finally, courts agree that "handguns are more likely to be connected with drug trafficking than long guns," such that the Guidelines indicate that "the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet." *Bolton*, 858 F.3d at 912 (quoting § 2D1.1 cmt. n.11(A)).

### *Counsel Was Not Deficient for Failure to Contest Firearm Enhancement*

Regarding the avoidance of the firearm enhancement, Petitioner faces an uphill battle that he cannot surmount. Petitioner is far from showing that any connection between his firearm and the drugs was "clearly improbable," and thus he is far from showing that his counsel was unconstitutionally deficient for failing to argue against the enhancement. Petitioner contends, as above, that he only possessed the gun to protect from kidnapping or hijacking, a danger made especially real to him after being kidnapped by Mexican cartels years earlier. Dkt. 78 at 3. Petitioner also contends that "it is extremely common for long haul truck drivers to carry a weapon to defend themselves on the highway." Dkt. 78 at 3. Finally, Petitioner contends that his pistol was not of the sort "preferred" by drug-dealers and that the federal government does not associate it with drug dealers. Dkt. 78 at 3.

Petitioner's arguments do not persuade the Court that his counsel should have argued it was "clearly improbable" that the firearm had any connection to the drugs. The firearm and the "mountain of cocaine," Dkt. 90, at 5-6, were found in proximity to one another, with the cocaine

---

[3] The Fourth Circuit first adopted and applied this approach in U.S. v. Harris, declaring: "We now unequivocally affirm the rule . . . that the proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under Section 2D1.1(b)." 128 F.3d 850, 852 (4th Cir. 1997).

stashed in black duffle bags, purposefully wrapped, and stored in the portion of the cab used for sleeping. The firearm may have not been the stealthiest sort, but nor was it an unloaded hunting rifle stashed in a closet—it was a loaded, close-range, covert, maneuverable weapon that a fact-finder could infer was used to protect the nearby drugs or the person transporting them. The Government likely could have proved a connection between the firearm and the drugs by a preponderance of the evidence, *Bolton*, 858 F.3d 912, and it is far from apparent that Petitioner was in a position to contest that finding by showing clear improbability.

More importantly, Petitioner's sentencing memorandum, prepared by his counsel, demonstrates that counsel had considered the firearm enhancement and had communicated with Petitioner about its application:

> Luis understands that the mere possession of the firearm in proximity to the cocaine is enough to sustain the dismissed count in the indictment and subject him to the Guidelines 2-point enhancement. He accepts full responsibility for the possession of it within his tractor and the consequences of his action.

Dkt. 64 at 4.

And in any event, as the Government points out, "it was not constitutionally deficient" for Petitioner's counsel to concede a two-point firearm enhancement in exchange for an agreement which dropped the § 924(c) charge and its not-insignificant mandatory minimum term. Dkt. 90 at 5. Such a plea resulted in a sentence that was "meaningfully below" what Petitioner likely would have faced had he proceeded to trial. Dkt. 90 at 5. Accordingly, Petitioner's claim that his counsel was ineffective for failure to contest the firearm enhancement must fail.

### *Law Regarding Safety Valve Provision*

In drug trafficking cases, the Guidelines provide for a reduction of two offense levels if

the defendant meets the criteria of Guidelines § 5C1.2(a)(1)–(5). *See Bolton*, 858 F.3d at 913

(citing U.S.S.G. § 2D1.1(b)(17)). This is known as the "safety valve" provision because it allows

shorter sentences for first-time offenders otherwise facing mandatory minimum sentences. *Id*.

(citing *United States v. Fletcher*, 74 F.3d 49, 56 (4th Cir. 1996)). To receive the reduction, a

defendant must prove by a preponderance of the evidence that he or she satisfies each of §

5C1.2(a)'s five criteria. *Id*. The five criteria are as follows: (1) the defendant does not have more

than 4 criminal history points or any prior 2-point or 3-point offenses; **(2) the defendant "did**

**not . . . possess a firearm . . . in connection with the offense;"** (3) "the offense did not result in

death or serious bodily injury to any person"; (4) "the defendant was not an organizer, leader,

manager, or supervisor of others in the offense"; and (5) "not later than the time of the

sentencing hearing, the defendant has truthfully provided to the government all information and

evidence the defendant has concerning the offense or offenses that were part of the same course

of conduct or of a common scheme or plan." § 5C1.2(1)–(5) (emphasis added).

      In cases involving drug trafficking with a firearm, the safety valve provision appears self-

defeating and out of reach, since the second § 5C1.2 criterion requires that the defendant have

not possessed a firearm in connection with the offense. § 5C1.2(2). However, the Fourth Circuit

has drawn a subtle evidentiary distinction which provides some daylight for defendants subject

to a firearms enhancement. In *Bolton*, the Court held that a defendant who is subject to a firearms

enhancement is not necessarily precluded from bringing a safety valve reduction claim. *Bolton*,

858 F.3d at 914. Instead, the Court clarified that the defendant may still seek safety valve

eligibility by proving *by a preponderance of the evidence* that "the firearm was not connected"

with the drug offense. *Bolton*, 858 F.3d at 914. In other words, the Court sought to distinguish

between the showings necessary for avoiding a firearm enhancement on one hand, and qualifying

for a safety valve reduction on the other. The Court emphasized that while a defendant seeking to avoid a weapons enhancement in sentencing has the heavy burden of showing that "any connection between a firearm and an offense is *clearly improbable*," a defendant seeking to qualify for the safety valve exception must prove a slightly lower burden—that, "by a preponderance of the evidence," the firearm and offense are not connected—a distinction that carries some difference. *Id*.

In addition to the second criterion, defendant also must show that he satisfies four other criteria, including the fifth criterion that he "has made full, truthful disclosure of information." *U.S. v. Aidoo*, 670 F.3d 600, 607 (4th Cir. 2012). This disclosure requirement is "limited to information about the offense of conviction and any other crimes that constitute relevant conduct." *Aidoo*, 670 F.3d at 611 (citing 18 U.S.C. § 3553(f)). "The defendant's burden under the safety valve is a true burden of proof that rests, at all times, on the defendant." *Id*.

> <u>Petitioner Was Not Prejudiced by Counsel's Failure to Seek Safety Valve Eligibility, and</u>
> <u>Counsel Was Not Deficient</u>

Petitioner contends that his counsel was ineffective for failure to seek his qualification under the safety valve provision. Since one such criterion is that the defendant "did not . . . possess a firearm . . . in connection with the offense," it is reasonable to assume that this would have immediately presented a sticking point for Petitioner's counsel in her consideration of whether to seek safety valve eligibility. Petitioner correctly points out that his firearm enhancement does not preclude his seeking the safety valve, and that he would need to show only by a preponderance of the evidence that the drug trafficking offense and the firearm were not connected. To that end, Petitioner offers the same evidence as above, *i.e.*, that he had an alternative and highly personal reason for carrying a firearm; that it is normal practice in the

16

industry to carry a firearm while trucking; and that his particular firearm was not one preferred by drug dealers or viewed askance by federal drug officers.

Given this evidence and the standard required, Petitioner is not wrong to think that, all else being equal, he *may* have been eligible for the safety valve. And, in the abstract, he is not wrong to allege that a defense attorney's failure to seek such an important pathway to potentially reducing a defendant's sentence would be unconstitutionally deficient.[4] But we must consider more than the abstract *possibility* that he could seek the safety valve. On the facts, Petitioner's claim falls short for several reasons.

First, Petitioner was not prejudiced by his counsel's failure to press a safety valve challenge at the sentencing stage, because the Court could not have authorized a sentence lower than 135 months once the Court accepted Petitioner's guilty plea. Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure allows Petitioner and the Government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case." Fed. R. Crim. P. 11(c)(1)(C). After the parties submit such a stipulation to the Court, the stipulated sentencing range "*binds the court* once the court accepts the plea agreement." *Id.* (emphasis added). Here, Petitioner pleaded guilty pursuant to a Rule 11(c)(1)(c) plea agreement in which the parties stipulated that he "shall be sentenced to a period of incarceration within the range of 135 months to 168 months," and the Government agreed to "recommend a sentence at the low end of the agreed sentencing range." Dkt. 66 at 4; Dkt. 57 at 3-4. At the plea hearing, the Court properly accepted Petitioner's plea and was therefore bound to issue a sentence within the stipulated range. It later pronounced a sentence at the very bottom of the stipulated range—135 months.

---

[4]     Courts have held that when "lawyers get the Guidelines wrong by misinterpreting the implication of a particular provision or by failing altogether to raise a potentially helpful provision," this can amount to deficient performance under Strickland. U.S. v. Rodriguez, 676 F.3d 183, 191 (D.C. Cir. 2012) (citing U.S. v. Soto, 132 F.3d 56, 59 (D.C. Cir. 1997).

Dkt. 89. At 5-6. Accordingly, Petitioner could not have been prejudiced by counsel's failure to press a safety valve challenge. From the moment the Court accepted Petitioner's Rule 11(c)(1)(C) plea agreement, any later attempt by Petitioner's counsel to seek a reduced sentence under the safety valve provision, *i.e.*, by raising such an argument at sentencing, would have been necessarily rejected by the Court, because such a reduction would have taken Petitioner's sentence outside of the stipulated range.

Second, Petitioner's counsel was not deficient for failure to press a safety valve challenge during the plea stage or at any other stage, both in light of the evidence against Petitioner and in light of the strategic choices presented to counsel. As to the evidence, Petitioner's proposed evidentiary arguments do not persuade the Court that Petitioner's counsel should have concluded he could disprove a drug-firearm connection by the preponderance of the evidence and qualify for the safety valve. Petitioner argues that he was once kidnapped by Mexican cartels and that this supports his assertion that he kept a firearm purely to protect himself from future, repeated harm—not to protect the drugs or himself as a drug dealer. But Petitioner pleaded to transporting drugs. The fact that he wanted to protect himself from Mexican cartels—*other drug dealers*—while he himself was transporting 135 pounds of cocaine—does not create any logical distance between the drugs and the firearm. Petitioner's argument merely shows that one motive for carrying the firearm was to protect himself against Mexican cartels during the course of his work as a truck driver, which, in this instance, included transporting cocaine. Accordingly, it is unlikely that Petitioner could have proved by a preponderance of the evidence that his firearm was not connected to the drug trafficking, and his counsel was therefore not deficient for failing to make the argument.

Furthermore, and most importantly, it was not unreasonable for Petitioner's counsel to

"decline to press a safety-valve challenge" when such abeyance may have been important leverage in securing the dismissal of the § 924(c) firearm charge. Although the record does not disclose that Petitioner's counsel explicitly considered the safety valve, neither is there a suggestion that Petitioner's counsel failed to know of the safety valve, wrongly assumed that Petitioner was disqualified due to the firearm enhancement, or committed some other grave error. Though Petitioner may argue in hindsight that counsel should have exploited every opportunity and argument, Petitioner cannot preclude the reasonable possibility that his counsel thought he was simply better off by declining to seek the safety valve in view of the other charges against him. In other words, Petitioner cannot show that his counsel's performance fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. 688 (1984)). Plea agreements entail a complex interplay of risks and tradeoffs, and such "strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Given the "strong presumption" of reasonableness that this Court must afford Petitioner's counsel, Petitioner's second claim that his counsel was ineffective—for failure to press a safety valve challenge—must fail.

### C.  Petitioner's Third Claim

Petitioner's third and final claim avers that his counsel was ineffective for "fail[ing] to secure" a substantial assistance motion under U.S.S.G. § 5K1.1 or Rule 35(b) motion. Dkt. 78 at 4. Substantial assistance motions, codified at 18 U.S.C. § 3553(e), provide that courts have the authority—upon motion of the government—to depart downward from the Guidelines to reflect the "defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 18 U.S.C. § 3553(e); Fed. R. Crim. P. 35(b); U.S.S.G. § 5K1.1.

In ruling upon such a motion, a court may consider, *inter alia*: (1) the significance and

usefulness of the defendant's assistance; (2) the truthfulness, completeness, and reliability of any information provided by the defendant; (3) the nature and extent of the defendant's assistance; (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and (5) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1(a). However, the Government has "inherent and expansive" discretion in making substantial assistance motions in the first place. *United States v. Snow*, 234 F.3d 187, 190 (4th Cir. 2000).

Here, the record does not support the conclusion that Petitioner provided substantial assistance to the Government. No facts suggest that Petitioner helped the Government in the "investigation or prosecution of another person." § 3553(e). In his motion, Petitioner argues that he "willingly collaborated" with prosecutors and "provided them with all the details related to his criminal charge," but this is unhelpful to Petitioner since it refers to his own criminal prosecution, not the prosecution of another. Dkt. 78 at 4. Petitioner further alleges that he was "made to understand" by his counsel that the Government would "file a Rule 35(b) recommendation" at a later point, "should the criminal proceeding extend beyond [Petitioner's] own sentencing." Dkt. 78 at 4. However, it is not clear that such a condition has occurred, and, in any case, Petitioner understood and signed a plea agreement which emphasized that the Government was "under no obligation" to make a motion for substantial assistance "even if [Petitioner] fully cooperate[d] with law enforcement." Dkt. 57 at 4. Accordingly, because the record suggests that Petitioner did not perform substantial assistance, and because the Government had full discretion whether to make such a motion in the first place, it is hard to see how Petitioner's counsel was deficient for failing to "secure" a substantial assistance motion in Petitioner's favor. Petitioner's final claim for ineffective assistance of counsel, therefore, must also fail.

**IV.      Conclusion**

In an order that will accompany this memorandum opinion, and for the reasons stated above, the Court will **DENY** Petitioner's Motion to Vacate, Set Aside, or Correct a Sentence, **Dkt. 78.** The Court will **GRANT** the Government's motion to dismiss, **Dkt. 90.**

The Clerk of Court is directed to send a copy of this Memorandum Opinion to the parties.

Entered this ___30th___ day of September, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

21